AO 106 (Rev. 04/010) Application for Search Warrant    AUTHORIZED AND APPROVED/DATE:    /S Bow Bottomly 04/26/2024

# UNITED STATES DISTRICT COURT
for the
WESTERN  DISTRICT OF  OKLAHOMA

In the Matter of the Search of  )
*(Briefly describe the property to be search*  )
*Or identify the person by name and address)*  )
PROPERTY KNOWN AS:  )   Case No:  M-24- 387 - STE
Aircraft hangar marked K3 located at  )
Sundance Airport  )
13000 N Sara Road  )
Yukon, Oklahoma 73099  )

### APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| | |
|---|---|
| 8 U.S.C. § 1324(a)(1)(a)(i) | bringing in an alien at a place other than a designated port of entry, |
| 8 U.S.C. § 1326(a) | illegal re-entry by a removed alien |
| 18 U.S.C. § 922(g)(5) | prohibited person in possession of a firearm |
| 18 U.S.C. § 545 | smuggling goods into the United States contrary to law |
| 18 U.S.C. § 922(a)(1) | importing firearms and ammunition into the United States, |
| 19 U.S.C. § 1590 | aviation smuggling |
| 49 U.S.C. § 46306 | registration violations involving aircraft. |

The application is based on these facts:

See attached Affidavit of Special Agent Joshua R. Dickson, Homeland Security Investigations, which is incorporated by reference herein.

- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18

U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

Joshua R. Dickson
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: **Apr 26, 2024**

City and State: **Lawton, OK**

*Judge's signature*

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

WESTERN DISTRICT OF OKLAHOMA

OKLAHOMA CITY, OKLAHOMA

STATE OF OKLAHOMA   )
                    )
COUNTY OF OKLAHOMA  )

## AFFIDAVIT

I, Joshua Dickson, being duly sworn, do hereby depose and state:

1. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since May 2022. I am currently assigned to Oklahoma City Field Office in Oklahoma City, Oklahoma. Formerly, I was a Border Patrol Agent with United States Border Patrol and had been so employed since October 2016. I hold a bachelor's degree in criminal justice from the State University of New York - Plattsburgh.

2. As an HSI Special Agent, I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21, United States Code, Section 2516.

3. This Affidavit is based upon the Affiant's personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available,

or of all facts known to me relative to this investigation. Rather, I have included facts which are necessary to establish probable cause that the premises described herein contains evidence of the commission of criminal offenses. This affidavit is made in support of an application for a search warrant for the location specifically described in Attachment A of this Affidavit: The aircraft hangar marked "K3" located at Sundance Airport, 13000 N Sara Road, Yukon, Oklahoma 73099, for property that constitutes evidence of the commission of a criminal offense; contraband, fruits, instrumentalities, and evidence of federal crimes in violation of 8 U.S.C. § 1324(a)(1)(a)(i) bringing in an alien at a place other than a designated port of entry, 8 U.S.C. § 1326(a) illegal re-entry by a removed alien, 18 U.S.C. § 922(g)(5) prohibited person in possession of a firearm, 18 U.S.C. § 545 smuggling goods into the United States contrary to law, 18 U.S.C. § 922(a)(1) importing firearms and ammunition into the United States, 19 U.S.C. § 1590, aviation smuggling, and 49 U.S.C. § 46306 registration violations involving aircraft. The items to be seized are more specifically described in Attachment B of this affidavit.

4. I am aware through training and experience, as well as information from other special agents, aircraft are used by criminal organizations for smuggling illicit goods between locations. Additionally, based on my training and experience, I know that firearms are tools of the illicit

smuggling trade and other criminal activity. As such, firearms and contraband are often within close proximity of each other. I know that criminal organizations attempt to circumvent customs inspection checkpoints for the purpose of smuggling illicit goods and people into the United States.

5. I have been involved in a wide variety of investigative matters. Among other responsibilities, I am responsible for conducting investigations into violations of federal criminal laws, including the smuggling of persons and merchandise into the United States. I have received approximately 24 weeks of specialized training at the Federal Law Enforcement Training Center in the enforcement of federal laws. I have arrested and interviewed numerous individuals who have been involved with smuggling aliens and goods into the United States.

6. On April 25, 2024, HSI Oklahoma City received information from U.S. Customs and Border Protection (CBP), Air and Marine Operations Center (AMOC) that an aircraft bearing tail number N3788Q had unlawfully entered the United States from Mexico and failed to stop for a customs inspection.

7. Prior to the aircraft's arrival in the United States, the pilot failed to adhere to instructions of Mexican authorities. Specifically, the aircraft did not have authorization to take off from Mexico but did so. Mexican

authorities also ordered the pilot to land the aircraft in Mexico, but the pilot failed to comply.

8. Flight records showed the aircraft took off from the Sundance Airport located in Yukon, Oklahoma on April 23, 2024. Yukon, Oklahoma is located in the Western District of Oklahoma.

9. Based on the flight records, HSI and other law enforcement partners anticipated the aircraft would land at the Sunday Airport. Therefore, HSI encountered the aircraft at Sundance Airport when it landed on April 25, 2024, at approximately 8:45 pm. The aircraft was occupied by Aiman Sobhy ELKHATIB and Armando MORALES-Alvarado. ELKHATIB provided agents with an Oklahoma driver's license and MORALES-Alvarado provided agents with an identification card issued by the Mexican Consulate. Identification documents obtained from both individuals indicate the two reside at the same location in 1615 SW 23rd Street, Oklahoma City, Oklahoma.

10. Law enforcement database checks show MORALES-Alvarado is an alien unlawfully present in the United States. Further checks show MORALES-Alvarado is assigned Alien Registration Number A026 442 700 and that he had been previously removed from the United States on August 3, 2005. MORALES-Alvarado is a citizen of Mexico.

11. Furthermore, flight records show the aircraft traveled from Mazatlan, Mexico, to Yukon, Oklahoma, without any other stops. During a post-*Miranda* interview, ELKHATIB confirmed he made the trip without making any stops.

12. The Sundance airport in Yukon, Oklahoma is not a designated port of entry or other place designated by the Commissioner to conduct border security or customs operations.

13. During the aircraft inspection, agents asked where the subjects were headed to and MORALES-Alvardo pointed in the direction of the hangars on the north side of the airfield which has a hangar marked as "K3". On a key ring in possession of ELKHATIB, there was a key with an attached tag that read "17".

14. Upon their detention, ELKHATIB and MORALES-Alvarado were searched and automobile key fobs found on their persons. One possessed a Kia key fob the other a Ram key fob. Based on my training and experience, as well as other law enforcement personnel involved in the aviation field, personal airport pilots commonly store their personal vehicles in their respective hangars while their plane is in use to protect their vehicles from inclement weather and for security purposes. Furthermore, agents looked around the public access lot of the airport and did not locate a Ram pickup or Kia automobile that would match the

key fobs on the key rings. Based on conversations with law enforcement agents, law enforcement believes one or both of the vehicles will be located in the hangar marked K3.

15. During a functional border search of the aircraft, agents discovered a loaded Glock handgun found in the cockpit area of the aircraft, placed between a seat and center console. MORALES-Alvarado does not possess any status to be in the United States, so may not possess a firearm lawfully. On December 5, 2023, in Oklahoma County District Court, Case number CF-2023-940, ELKHATIB pleaded guilty to burglary in the second degree and larceny of an automobile.  Sentencing was deferred until December 5, 2026.  Additionally, on April 4, 2024, in Oklahoma County District Court, Case number CF-2021-3782, ELKHATIB pleaded guilty to grandy larceny and false impersonation of another.  Sentencing was deferred until April 3, 2031.   As ELKHATIB is presently on probation he is not legally able to possess a firearm.

16. During a post-*Miranda* interview of ELKHATIB, he stated there were no weapons in the aircraft other than a pocketknife. There was no documentation found, nor did ELKHATIB state that he filed any paperwork with the Bureau of Alcohol, Tobacco, and Firearms to attempt to import a firearm.

17. On April 26, 2024, agents obtained a hangar lease agreement from Sundance Airport. The agreement stated the lease was entered on January 1, 2023, between Sundance Airport LLC. and Aiman ELKHATIB who was listed through the document as "TENANT". The second page of the agreement showed a hand-written signature for ELKHATIB and an address provided for him as 1615 SW 23rd Street, Oklahoma City, OK. This address is the same as the one listed on his driver's license. Additionally, the lease agreement states hangar "K3" shall be leased by the tenant.

18. The aircraft ELKHATIB listed on the lease is a V35 Bonanza. United States Department of Transportation records show tail number N3788Q is assigned to aircraft Beech V35 Bonanza.

19. Law enforcement agents inserted the key with attached tag "17" into the lock on the door for "K3". Investigators discovered the key did function both clockwise and counterclockwise turns with lock to the hangar and then removed the key. This indicated to agents the key was designed for that specific door and would allow access to the hangar utilizing that key.

20. Based on my training and experience, as well as my participation in numerous smuggling investigations, I know the following:

   a)  I am aware that smugglers frequently keep assets, records, and documents related to their smuggling organizations, and monies

derived from the sale and transportation of smuggled goods, in properties they own or lease, such as store units, personal residences, garages, and as in this case airplane hangers, as they are secured locations they control that are not easily detectable by law enforcement officials conducting investigations.

b) I am aware that smugglers often maintain on-hand quantities of currency in order to finance their ongoing smuggling business;

c) I am aware that smugglers maintain books, records, receipts, notes, ledgers, airline tickets, travel logs, money orders, maintenance logs, and other papers relating to the transportation, ordering, sale and movement of smuggled goods, even though such documents may be in code. It is particularly common that individuals engaged in smuggling will keep ledgers related to their illegal activity because smugglers commonly move multiple shipments for clients over various periods time.

d) I am aware that the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the smugglers have ready access to them, i.e., homes, automobiles, businesses, safe houses, and airplane hangars;

e) I am aware that it is common for smugglers to conceal contraband, proceeds of smuggling activity, and records of smuggling

transactions, in secure locations within residences, garages, storage building, safes, and safety deposit boxes for ready access, and also to conceal such items from law enforcement agencies;

f) I am aware that when smugglers acquire large sums of proceeds from smuggling acts, they attempt to legitimize their profits;

g) I am aware that to accomplish these goals, smugglers utilize, among other things, banks and their attendant services, securities, cashier checks, money drafts, letters of credit, brokerage houses, real estate companies, shell corporations, and business fronts;

h) I am aware that smugglers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, or telephone numbers for their associates in the smuggling organization, even if said items may be in code;

i) I am aware that smugglers commonly take photographs (or cause photographs to be taken) of themselves, their associates, their property and their products, and that these smugglers usually maintain these photographs in their possession and at their residence;

j) I am aware that smugglers will store on computers and electronic other devices the above listed evidence to include flight logs, flight plans, maps, maintenance logs, persons transported, good or cargo

        transported, accounts receivables, electronic communications, and other evidence related to the violations alleged; and

k)    I am aware that firearms are commonly used by smugglers to protect their inventory and currency.

21. Based on the above information, there is probable cause to believe the items described in Attachment B are presently located within the premises described in, and set forth in Attachment A. Accordingly, I respectfully request the Court authorize Homeland Security Investigations to search the premises described in Attachment A of the affidavit and seize evidence and instrumentalities of the above violations of federal law and related contraband, as described in Attachment B.

Reviewed and Approved:

_____
Joshua R Dickson
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me in my presence on this _____ day of April 26, 2024.

_____
SHON T. ERWIN
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PREMISES TO BE SEARCHED

The aircraft hangar marked "K3" located at Sundance Airport, 13000 N Sara Road, Yukon, Oklahoma 73099. The search will include the building/hangar and any vehicles present within the building/hangar. The property is as shown below:



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations relating to violations of 8 U.S.C. § 1324(a)(1)(a)(i) bringing in an alien at a place other than a designated port of entry; 8 U.S.C. § 1326(a) illegal re-entry by a removed alien; 18 U.S.C. § 922(g)(5) prohibited person in possession of a firearm; 18 U.S.C. § 545 smuggling goods into the United States contrary to law; 18 U.S.C. § 922(a)(1) any person other than an FFL, knowingly to import, or bring into the United States, any firearms or ammunition; 19 U.S.C. § 1590, aviation smuggling; and 49 U.S.C. § 46306 registration violations involving aircraft:

1. Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, and video display monitors that may be, or are used to: maintain electronic records such as travel logs, flight plans, ledgers, records of goods and cargo transported on the aircraft, records of persons being transported, communications regarding travel for the aircraft and good, cargo and persons to be transported.

2. Firearms, magazines, ammunition, and any records relating to the purchase or transfer of firearms or firearm components.

3. Any and all notes, documents, records, or correspondence, including, envelopes, letters, papers, logs, and handwritten notes pertaining to creating monitoring and altering flight plans with the Federal Aviation Administration or similar agency in Mexico, weather information, the bringing in an alien at a place other than a designated port of entry, smuggling goods into the United States contrary to law, knowingly importing or bring into the United States any firearms, and the registration violations involving the aircraft.

4. Any and all notes, documents, records, or correspondence, including, envelopes, letters, papers, and handwritten notes pertaining to flight logs, fuel receipts, maps, diagrams of airports, flight plans, maintenance logs, persons transported, goods or cargo transport, or accounts receivable in any medium such as written or electronic.

5. Any and all documents, records, or correspondence, including, envelopes, letters, papers, pertaining to occupancy or ownership of the K3 hanger or aircraft described above, rental or lease agreements, mortgage documents, rental or lease payments, mail envelopes, or addressed correspondence.

6. Any financial instruments, including U.S. currency, which relates

to the sale, transfer, mailing, or distribution of cargo, firearms, controlled substances, or illicit goods.

7. Any evidence constituting ownership of firearms.

8. Any evidence constituting ownership, registration, maintenance of an aircraft or vehicles.

9. Any correspondence, writings, documents constituting knowledge of relationship between MORALES-Alvarado and ELKHATIB.

10. Any correspondence, writings, documents constituting the immigration status of MORALES-Alvarado.

During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.